211 P.2d 776

**NEWTON et al. v. WILSON et al.**

No. 5169.

Supreme Court of New Mexico.

Nov. 7, 1949.

Rehearing Denied Dec. 5, 1949.

Reese & Reese, Roswell, J. T. Morgan, Portales, for appellants.

Otto Smith, Clovis, James C. Compton, Portales, for Mattie E. Wilson, Sherman D. Bracken and Vesta Bracken, appellees.

Rowley & Davis, Clovis, for Kansas City Life Ins. Co., appellee.

McGHEE, Justice.

The appellants, plaintiffs below, are the daughters of James Lee Wilson, who departed this life on March 11, 1946, intestate, and brought this action seeking to cancel a deed from him to Mattie E. Wilson, a deed from her to the appellee Sherman D. Bracken and to establish a three-eighths interest in certain real property in Roosevelt County; and also to have a mortgage given by Bracken to the appellee Kansas City Life Insurance Company held inferior to their interests. The appellee Mattie E. Wilson is the surviving widow of James Lee Wilson and the administratrix of his estate. We will refer to the parties as they appeared in the trial court.

James Lee Wilson and Mattie E. Wilson were married in the year 1920 and lived together until the time of his death except for four or five months in the year of 1926. There were no children born of this marriage. Early in 1926 Wilson left the home he had been occupying with her in Portales, New Mexico, and his whereabouts were unknown for four or five months. During his absence she instituted an action for divorce but dismissed it after they became reconciled and resumed the marriage relation, and after they had entered into a written contract which, except for the acknowledgment, reads as follows:

"Exhibit 'A'

(Filed August 30, 1926 at 11 a. m., and recorded in "F" of Miscellaneous on page 321, Records of Roosevelt County, New Mexico.)

"The State of Texas ⎰
County of Hutchinson ⎱ ss

"Articles of Consolidation for the Community

"Know All Men By These Presents: This *this* instrument or contract in writing made this the 30th day of August, 1926, between James Lee Wilson, party of the first part, and Mattie E. Wilson, his wife, party of the second part, Witnesseth:

"Whereas, the parties hereto are husband and wife and own their own right as separate property, in each divers parcels of property, both real and personal, located and situated in the States of Texas and New Mexico, respectively; and

"Whereas, Said parties being husband and wife, desire that said property hereinafter mentioned, shall be and remain community property unto the said parties hereto and shall be subject to the ownership and control hereafter the same as property acquited during coverture of said parties, and earned by their joint efforts as husband and wife in the ordinary accumulation of community property.

"The party of the first part desires to and does put into the community a certain leasehold of Lots 13 and 14 of Block 21 in the original townsite of Borger, Texas, in the County of Hutchinson, together with all improvements thereon; all of his personal property, of whatsoever nature, including cash, furniture, automobiles and divers other property not mentioned herein.

"The party of the second part desires to place into the community the East one-half (½) of Section Thirty-four (34), the West one-half (½) of Section thirty-five (35), the Southeast Quarter (¼) of Section thirty-five (35), all of Township 6 South, Range 32 East, the N.M.P.M.; and Lots three (3) and four (4) and the South one-half (½) of the Northwest Quarter (¼) of Section 2, all in Township 7 South, of Range 32 East, N.M.P.M.; Lot 9 Block 23 original townsite of Portales, N. Mex. with all improvements thereon, and Lots four (4) and six (6) in Block 31 of the Gee addition of the town of Elida, New Mexico; and Lots ten (10) and eleven (11) and twelve (12) block 15, East Portales, New Mexico all in Roosevelt County, N. Mex. The second party hereto owns other separate and individual property but same does not become a part of the community or pass under this contract.

"It is intended by and between the parties hereto that all the property enumerated above shall be and become community property, as aforesaid, and the title separately

vested in the parties hereto shall be jointly vested in the parties under the same power of ownership and control as *it* jointly earned and shall pass by inheritance upon the death of either of the parties hereto the same as any other property of the community.

"The party of the first part hereby assigns and conveys for a valuable consideration of love and affection for the second party, his wife, a community interest in said property, above mentioned as belonging to him, the same as if the same had been acquired by purchase; the second party hereto hereby conveys and assigns unto the first party for a valuable consideration of love and affection a community interest into the above mentioned property as belonging to her, the same as if the same had been acquired by purchase.

"In Testimony Whereof, The said parties hereto have set their hands this the 30th day of August, 1926, in the presence of said notary and subscribing witnesses.
"James Lee Wilson,
Party of the First Part
"Mattie E. Wilson,
Party of the Second Part
"Subscribing Witnesses:
"Maude Smith
"W. B. Oldham."

This contract is the basis for the claim of the plaintiffs that the real estate involved in this action was the community property of their father and stepmother, as it is clear that all of the real estate, except a hotel, was the separate property of Mattie E. Wilson at the time of their marriage. She later used her separate funds to purchase his interest in the hotel property for $2,000 and the assumption of a mortgage against it. James Lee Wilson owned a surface lease on two lots in Borger, Texas, and some personal property at the time of the execution of the contract.

After alleging that the real property involved was the community property of James Lee Wilson and Mattie E. Wilson, the plaintiffs pleaded that shortly before his death their father had executed a deed to the property to Mattie E. Wilson but at said time he was mentally incompetent to understand the nature of his act, that the grantee had procured its execution by fraud and undue influence, and that the deed was not delivered to her during the lifetime of the grantor. They further pleaded that a part of the property had been conveyed to the defendant Bracken without consideration to defraud them of their interests.

The defendant Mattie E. Wilson, individually and as administratrix, admitted the execution of the deed to her from Wilson, pleaded that it had been delivered to C. M. Compton, Jr., for delivery to her on the death of said James E. Wilson and that it was then delivered; denied that he

was incompetent, and also denied that she had practiced fraud or had exercised undue influence upon him. She further pleaded the invalidity of the contract, Exhibit "A" supra, stated that she was the owner of said real estate, and that if any title was conveyed to her then husband by the contract he held it as a trustee for her.

The defendant Bracken joined in the answer of Mattie E. Wilson and denied that the deed had been given to him without consideration, and pleaded that he had a valid deed. The insurance company pleaded that it had made a loan on the property in good faith upon the record title, and without knowledge of any claims of the plaintiffs. These pleas were upheld by the trial court.

The trial court found against the plaintiffs on the issues of fraud, the claimed incompetency of the grantor, the delivery of the deed and on their claim that the grantee had exercised undue influence on their father. It also found that at the time of the execution of the contract Mattie E. Wilson owned all of the property involved here as her separate estate, and that she signed the contract without the benefit of independent legal advice. It also found in favor of Bracken and the insurance company.

The plaintiffs seek a reversal of these adverse holdings.

If the attempted conversion of the separate properties of the parties into community property was void we need not consider the other questions in the case.

Notwithstanding the allegation in the complaint that the property here involved was the community property of James L. Wilson and Mattie E. Wilson, and that it was acquired by them after their marriage, the plaintiffs now attempt to shift their position and say that the contract conveyed to James Lee Wilson an undivided one-half interest in the property, and that therefore this case is not controlled by McDonald v. Lambert, 43 N.M. 27, 85 P.2d 748, 120 A.L.R. 250, where we held that a husband and wife could not by contract transmute separate property into community property. This is exactly what the parties to the contract attempted to do, but their acts were a nullity under the rule of McDonald v. Lambert, and a majority of the members of the court do not favor overruling that case at this late date.

The plaintiffs also attempt to avoid the doctrine of the McDonald case by invoking the statute of limitations and laches. It must be kept in mind that the parties to the contract lived together as husband and wife from the time of its execution until his death. It is the policy of the Law to prevent litigation between husband and wife, not to promote it as would be the case if the wife had to sue her husband

to avoid limitations and laches. Cary et al. v. Cary, 159 Or. 578, 80 P.2d 886, 121 A.L.R. 1371, and Bennett v. Finnegan, et al., 72 N.J.Eq. 155, 65 A. 239. See also Annotation in 121 A.L.R. 1384, and Torrez et al. v. Brady et al., 37 N.M. 105, 19 P.2d 183, where we held that limitations do not run by adverse possession as between husband and wife. The plaintiffs cite the case of Primus v. Clark, 48 N.M. 240, 149 P.2d 535, in support of their claim that limitations and laches run as between husband and wife. The parties in that case had been divorced for more than the applicable statutory period, and in addition only one member of this court concurred with the writer of the opinion, the other three merely concurring in the result. That case is not authority here.

It follows, therefore, that at the time of the execution of the deed by James Lee Wilson to Mattie E. Wilson he had nothing to convey. The real estate therein described was her separate property, and the other questions raised by the plaintiffs are, therefore, immaterial.

The judgment will be affirmed, and It Is So Ordered.

BRICE, C. J., LUJAN, J., and CARMODY, District Judge, concur.

SADLER, J., dissents.

COMPTON, J., not participating.

SADLER, Justice (dissenting).

The doctrine of stare decisis is strong and well established. But it has never impressed me as strong enough to achieve magic in its application. In my opinion, nothing short of that could free the case of McDonald v. Lambert, 43 N.M. 27, 37, 85 P.2d 78, 120 A.L.R. 250, from the error which has inhered in the decision since it was first announced. It would be a simple matter for me to cite the doctrine of stare decisis and concur with my brethren in this opinion. But when I consider doing so, the spirit rebels. If the decision was as wrong as the late Mr. Justice Bickley and myself felt it to be when we dissented in that case, it is just as wrong now. The passing years have in no way served to dilute the error inhering from the beginning in a holding which says husband and wife may not by agreement between themselves transmute separate estate into community property and vice versa under a statute, 1941 Comp. § 65-206, L.1907, c. 37, § 4, which declares: "Either husband or wife may enter into any *engagement or transaction with the other,* or with any other person *respecting property,* which either might, if unmarried." (Emphasis mine.)

The Supreme Court of California from which state we adopted the statute, in two

separate decisions handed down four and eight years, respectively, prior to our adoption of it, had held the statute authorized the spouses to transmute separate estate into community property and, as well, community property into separate estate. Yoakam v. Kingery, 126 Cal. 30, 58 P. 324; In re McCauley's Estate, 138 Cal. 546, 71 P. 458. The language of the statute itself, without the aid of the doctrine of adopted construction, reasonably yielded itself to no other construction. Reinforced by the doctrine, such a construction seemed compelled. All these weighty considerations, however, were lightly brushed aside in McDonald v. Lambert to follow the precedent of a Texas decision in Kellet v. Trice, 95 Tex. 160, 66 S.W. 51, rendered in the absence of an enabling statute such as California had, and which we, previously, had adopted from California along with the construction given it by that state's highest court.

As already said, the holding in McDonald v. Lambert, supra, has improved none with age and has resulted only in greatly confusing and complicating the property rights of husband and wife. The suggestion that in the lapse of eleven years since that decision the legislature has done nothing to change its holding on the point at issue is entitled to no weight whatever. The legislature some thirty years earlier, in language which it unquestionably felt so plain as to be free from any doubt, adopted a statute from California which its Supreme Court on two occasions already had held conferred the power on husband and wife to transmute property from one form into another. In the face of that experience, how can its failure to repeat what it already had done fairly be said to have any significance whatever! Comment by the author of the case note in A.L.R. to a report of McDonald v. Lambert, 43 N.M. 27, 37, 85 P.2d 78, 120 A.L.R. 250, the annotation beginning at page 264, obviously senses anomaly in our failure to follow the California decisions construing the very statute rendered prior to our adoption of it. See comment on pages 267 and 268 of 120 A.L.R.

Perhaps, it had never occurred to the majority in McDonald v. Lambert, that the result which they affirmed it was impossible to achieve by agreement of the spouses, the transmutation of separate estate into community property, takes place constantly, nevertheless, where the separate property or funds become so commingled with community property that it is impossible to trace and identify the separate property in the commingled mass. Especially is this true of tangible personal property of the same kind and quality, such as grain or sheep. Cf. Brown v. Lockhart, 12 N.M. 10, 71 P. 1086; Stroope v. Potter, 48 N.M. 404, 151 P.2d 748. May not the rationale of such decisions rest as much on presumed intent of the parties in permitting the com-

mingling as on any doctrine of necessity? It seems so to me. To say the least, the "impossible" does happen and what was separate property, a character given it by the method of acquisition at the time of acquisition, henceforth becomes and is community property, a character it did not have when acquired, the holding in McDonald v. Lambert to the contrary notwithstanding.

Indeed, it is a peculiar reason or logic which, under the conditions described, upholds the power to transmute commingled separate estate into community property, irrespective of intent on the part of the spouses, and yet denies their right under our statute to accomplish the same result, absent the element of commingling. Conceivably, the commingling in a given case may have resulted from an *express* agreement between the spouses that all property, of the one kind or the other, should be held as community property. Will that agreement poison an application of the doctrine, otherwise controlling, to commingled property? Let the majority answer.

But why go on? Stare decisis seemingly satisfied as many as four of the five of us to concur in affirming a decision which an abiding conviction, from the very beginning, has convinced me is absolutely wrong and should never have been announced in the first place. Since our holding in State v. Jones, 44 N.M. 623, 107 P. 2d 324, that we may give an overruling decision prospective operation only, the doctrine that the earlier decision has become a "rule of property" furnishes a poor shield, indeed, behind which to perpetuate error.

The considerations mentioned failing to move the majority, nothing remains but to refer the reader to my dissenting opinion in McDonald v. Lambert, supra, for reasons additional to, or confirmatory of, those here given stating why, in my settled judgment, the decision is wrong. The result is that an agreement entered into between a husband and wife, in the best of faith, in a belief then fully justified that this statute meant what it said, and that, too, long before this court by a three to two decision in McDonald v. Lambert had held otherwise, is completely nullified. Accordingly, property is distributed in a manner different from what the husband and wife intended, as reflected by the solemn agreement entered into between them, which the majority now declare is wholly void.

I dissent.