326 P.2d 1098

Matter of the Applications of A. W. LANGENEGGER No. RA–3171–A.B.C. and D. to Change Means and Points of Diversion and Appropriation of Underground Waters.

A. W. LANGENEGGER, Applicant-Appellant,

v.

STATE of New Mexico ex rel. John H. BLISS, State Engineer, Respondent-Appellee,

Carlsbad Irrigation District, Protestant-Appellee.

No. 6163.

Supreme Court of New Mexico.

June 17, 1958.

Rehearing Denied July 10, 1958.

G. T. Hanners, Lovington, Paul W. Eaton, Jr., Roswell, for appellant.

Fred M. Standley, Atty. Gen., Charles D. Harris, Sp. Asst. Atty. Gen., Jack L. Love, Sp. Asst. Atty. Gen., for respondent-appellee.

Stagner & Sage, Carlsbad, for protestant-appellee.

PER CURIAM.

Upon a consideration of the motion for rehearing the former opinion is withdrawn and the following is substituted.

McGHEE, Justice.

The applicant, A. W. Langenegger, appeals from the judgment below affirming the state engineer's refusal to allow him to drill four shallow ground water wells on his 573 acre farm. The crux of the case is whether applicant has a valid appropriative water right in the public ground waters and should be allowed to change his method of diversion from a system of artificial drains to wells.

The farm lies within the Roswell Artesian Basin immediately adjacent to the Pecos River and extends about a half mile west of the river. The basin contains two bodies of public underground water known as artesian and shallow water. The artesian water occurs in the San Andreas limestone formation and is confined under pressure by an overlapping impervious strata called the chalk bluff or red beds. The shallow water lies in the valley fill overlying the chalk or red bluff formation and consists of all such water below the land surface. It is derived from upward percolation of artesian water through fractures in the confining formation, downward percolation from precipitation, leaky artesian wells and return flow from irrigation. The artesian and the shallow underground water are administered as two bodies of water.

The first development of the water in the basin began in the early part of this century, when numerous artesian wells were drilled. As a result of this development, and the application of the water upon the land, the ground water table gradually rose. At a point a mile and one-half south of applicant's farm a stream appeared in a natural drain known as Cottonwood Creek. In 1923 the Lake Arthur Drainage District constructed a system of drain ditches and lateral lines for the primary purpose of removing surplus waters from the lands where the water table was close to the surface, in order that they could be cultivated. A part of this system was the "A" drain line, an open ditch which commenced several miles west of the Pecos River, and running easterly to the river, across appellant's farm.

Connected to the "A" drain line, throughout its length, are subsidiary lateral ditches and underground tile lines. At all times since the construction of the system in 1923, the waters it intercepted and gathered have been beneficially applied on the farm by applicant and his predecessors. The source of the waters as found by the trial court is the public underground waters.

In the year 1928, pursuant to Laws of 1907, ch. 49, § 53 (§ 75-5-25, N.M.S.A., 1953 prior to amendment in 1941), a statute authorizing the state engineer to permit the use of seepage water from constructed works and giving first preference to the owners of such constructed works, applicant's predecessor in title who had purchased the irrigation district rights to the water in the "A" line, was granted a permit to use all of the water carried in the "A" drain line. Water has been diverted from the line at two points—a pump in the "A" drain and a pump in the Pecos River. Apparently it was more convenient to allow part of the water carried in the drain to empty into the river and then recapture it at another point for use on the farm. In 1933 a decree was entered in the United States District Court for the District of New Mexico, being United States v. Hope Community Ditch, et al., No. 712, Equity, in which case M. W. Evans, a predecessor in interest of applicant, was a party. The decree determined that his right to take water from the "A" drain did not constitute a right to take any public waters of the state; that the waters carried in the drain were private waters and that he might allow it to empty into the Pecos River and thereafter recapture it provided that the amount so diverted from the river was limited to the amount actually contributed to the river from the drain, making allowance for carriage losses. It is not contended that applicant has the right to a direct diversion from the river.

For several years enough water was intercepted by the drainage system to irrigate the entire farm. During this time there was very little development of the

shallow ground water in the basin. But increasingly until 1937, when the basin was closed to new appropriations, there was a considerable development of such water. Due to this factor and decreased rainfall, the level of the ground water basin gradually became lower and lower. In 1947, according to the first recorded measurement, only enough water was carried in the "A" drain to irrigate 122 acres of land. In 1950 there was water only for the irrigation of 50 acres. The flow was even less in 1952, the year that applicant purchased the farm and the water right, and at the time application was made for the drilling of wells the drain had no longer intercepted and diverted water in usable quantities for the farm.

Following a hearing by the state engineer, at which the Carlsbad Irrigation District and the Pecos Valley Conservancy District appeared as protestants, Langenegger's application was denied for the following reasons assigned by the state engineer: That the applicant had not theretofore appropriated any of the public underground water on his lands; that the waters of the Roswell Artesian Basin had been fully appropriated; that an approval of the application would affect the base flow of the Pecos River to the impairment of existing rights; and that the form of application to change the manner of diversion did not comply with regulatory statutes, particularly § 75–11–5, N. M.S A.1953, in that it did not specify the location of existing wells.

The protest of the Pecos Valley Conservancy District was dismissed from the litigation in the lower court for failure to give proper notice of protest.

The lower court found as facts the matters which have been heretofore described. In addition it found that it is and has been the practice of the state engineer to permit shallow underground water appropriators to deepen existing wells or drill additional wells in order to supplement the supply of water to the existing appropriative right when it is not satisfied by the original means of diversion. It further found that the customary method of appropriating the shallow underground waters of the basin has been by the drilling of vertical pumping wells, while applicant's appropriation was by a constructed system of ditches; that the ditches could be deepened to intercept more water, but the expense of such an operation would be prohibitive, while the drilling of wells for the purpose would be economically feasible. The court also found that if the wells applied for were drilled, the result would be a lowering of the water table on the farm and on the land to the west of it, which would retard the encroachment of salt cedars and other phreatophytes, and diminish loss of water through evapo-trans-

piration and reduce the non-beneficial consumption of water in the area.

The court then adopted the following conclusions of law:

"1. That the decision of the State Engineer was based upon substantial evidence, was proper, and was not unreasonable, arbitrary or capricious.

"2. That the applicant has no right to the use of public waters in the Roswell Artesian Basin.

"3. That the waters provided by the 'A' drain line were at all times material hereto private artificial waters and did not constitute a part of the public waters of the state.

"4. That the decree entered in the Hope Community Ditch case determined rights to public waters and is not *res adjudicata* as to applicant's rights in this controversy.

"5. That the drain lines described in the applications do not conform to the requirements of the law, being Section 75–11–5 New Mexico Statutes Annotated 1953.

"6. That the application of A. W. Lengenegger could not be approved without impairing existing rights.

"7. That the decision of the State Engineer denying such applications should be approved and confirmed."

The contentions of the parties are directed to the conclusions, although the one numbered 6 might more properly have been included in the findings of fact, but failure so to do is really immaterial.

■ The question of whether drainage waters were subject to appropriation arose shortly after the construction of drain lines by the East Grand Plains Drainage District in the same water basin as the Lake Arthur Drainage District, and it was held in Hagerman Irrigation Company v. East Grand Plains Drainage District, 1920, 25 N.M. 649, 187 P. 555, that such waters were private and not subject to appropriation. The doctrine has been universally recognized in the Pecos Valley where there are four drainage districts and this is the first challenge made to that decision. Such waters were sold by the districts and applied to the irrigation of lands without let or hindrance from the State Engineer or other water users. The rule that these drainage waters are private has become a rule of property, and it is now too late to change it, even if we were inclined so to do.

■ We again hold drainage waters are private and further the use of the drainage water for irrigation of lands by the applicant and his predecessors may not be made the basis for a right to appropriate the

public waters of this state, although the drainage waters are now depleted.

By reason of what we have said it is unnecessary to notice the contention made by the protestant under his cross praecipe.

The judgment will be affirmed, and it is so ordered.

LUJAN, C. J., and SADLER and COMPTON, JJ., concur.