LAURA MASSAGLIA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66461.    Filed November 30, 1959.

*Palmer Johnson, Esq.*, and *Conrad T. Bjornlie, Esq.*, for the petitioner.

*Thomas F. Greaves, Esq.*, and *Mark Townsend, Esq.*, for the respondent.

## OPINION.

BLACK, *Judge:* The first question here presented is whether, as petitioner contends, the petitioner's interest in certain real property was, prior to the death of her husband, a community interest so that petitioner is entitled to employ the value of the property at the time of her husband's death as her cost basis therefor; or whether, as respondent has determined, petitioner acquired one-half interest as tenant in common in the properties prior to the death of her husband with the result that her basis therefor is one-half the adjusted cost of the properties. Thus, petitioner claims and respondent denies applicability of section 113(a)(5),[1] 1939 Code.[2]

The existence of interests in real property is a matter of State law; the occasion and extent of their taxation by the Federal Government, a matter of Federal law. *Burnet* v. *Harmel*, 287 U.S. 103, 110; *Morgan* v. *Commissioner*, 309 U.S. 78, 80. Under the law of New Mexico, the situs of the land and the domicile of the marital community at the time of acquisition of the properties, the status of

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

* * * * * * *

(5) PROPERTY TRANSMITTED AT DEATH.—If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. * * * For the purposes of this paragraph the surviving spouse's one-half share of community property held by the decedent and the surviving spouse under the community property laws of any State, Territory or possession of the United States or any foreign country shall be considered to be property "acquired by bequest, devise, or inheritance" from the decedent, if the death of the decedent was after December 31, 1947, and if at least one-half of the whole of the community interest in such property was includible in determining the value of the decedent's gross estate under section 811. * * *

[2] All section references are to the Internal Revenue Code of 1939, as amended.

all real property is governed by statute and real property acquired by either husband or wife subsequent to marriage is community property, except that which is acquired by either husband or wife by gift, bequest, devise, or descent. *Hollingsworth* v. *Hicks*, 258 P. 2d 724. Husband and wife may, by statute, transmute the character, and consequently the nature and extent, of their property. *Chavez* v. *Chavez*, 244 P. 2d 781 (1952). Since by oral agreement, subsequently confirmed and ratified in written, recordable form, petitioner and her husband had agreed that inasmuch as their income would be the product of their joint labors and that each should receive one-half thereof as his or her separate property, under the law of New Mexico, as announced in the *Chavez* case, *supra*, petitioner held an undivided one-half interest in the properties as tenant in common with her husband. Accordingly, petitioner is not entitled to the application of section 113(a)(5) and respondent is sustained as to that issue.

Petitioner, however, contends that prior to the execution of the agreement confirming and ratifying the oral agreement she and her husband made prior to the acquisition of any property in New Mexico, the Supreme Court of that State had announced a statutory construction which prohibited such transmutation of community property, *McDonald* v. *Lambert*, 85 P. 2d 78 (1938); that it repeated this construction subsequent to the execution of the written agreement and prior to her husband's death, *Newton* v. *Wilson*, 211 P. 2d 776 (1949); and that it was not until 5 months after the death of petitioner's husband that the court overruled these two cases in the *Chavez* case and construed the New Mexico statutes as permitting such transmutations. Petitioner contends, therefore, that this Court must look to the law of New Mexico as construed by that State's highest court prior to the death of her husband, and that we may not accord retrospective operation to the decision in the *Chavez* case.

The highest court of each State may determine whether its decisions which overrule prior decisions involving construction of State statutes shall operate prospectively and retrospectively, or prospectively only. It is not within the province of Federal courts to review the wisdom or folly of these determinations, nor do they offend article I, section 10 of the United States Constitution for they constitute judicial rather than legislative action. *Gt. Northern Ry.* v. *Sunburst Co.*, 287 U.S. 358. It was formerly the rule for Federal courts that:

The construction, by the highest court of the state * * * is binding upon the national courts. [Citations.]

Where such decisions are in conflict, the national courts will follow the latest settled adjudications of the highest court of the state rather than the earlier

ones, [citations] excepting in cases where contracts have been theretofore entered into or rights or titles acquired on the faith of the earlier decisions. [Citations.]

*Jackson* v. *Harris*, 43 F. 2d 513, 516–517 (C.A. 10), "But that freedom of choice between earlier and later decisions of state courts no longer obtains since Erie R. Co. v. Tompkins, 304 U.S. 64 * * *." *Sunray Oil Co.* v. *Commissioner*, 147 F. 2d 962 (C.A. 10), certiorari denied 325 U.S. 861. If, therefore, the Supreme Court of New Mexico intended that the *Chavez* case should have retrospective as well as prospective operation, we are bound to apply that latest decision to the facts of this case. For clarity and brevity, citations to the case law of New Mexico, and our comments thereon, are set forth marginally in our discussion of the law of New Mexico.

The announced policy of the highest court of New Mexico is that decisions which have become rules of property by reason of widespread reliance thereon, shall not be overruled except for the most compelling reasons.[3] A major premise upon which this policy rests is that overruling decisions operate retrospectively as well as prospectively and, by such retrospective operation may work hardship and create confusion as to rights in, and title to, property.[4] Both prior and subsequent to its decision in the *Chavez* case, the New Mexico court has applied the overruling of prior decisions affecting real property to facts occurring before the overruling decision.[5] Indeed, the decision in the *Chavez* case itself operated upon facts occurring subsequent to the decisions in the cases overruled and prior, obviously, to the overruling decision.[6] Later opinions of the New Mexico Court in which reference is made to the *Chavez* case

---

[3] *Applications of Langenegger*, 326 P. 2d 1098, 1101 (1958); *State* v. *Dority*, 225 P. 2d 1007, 1019 (1950); *Baca* v. *Chavez*, 252 Pac. 987, 989 (1927); *Duncan* v. *Brown*, 139 Pac. 140, 141 (1914).

[4] "Should we overturn the rule announced in the Barnett Case, the result would be to open up the subject of property rights between husband and wife in every decree of divorce granted subsequent to the decision in that case * * * and cast a cloud upon the title of all real estate transferred by either the divorced husband or wife, the title to which was not adjusted in the decree." *Duncan* v. *Brown, supra,* at 141. See also, *State* v. *Dority, supra.*

[5] *Seidler* v. *Maxfield*, 20 Pac. 794 (1889); and *Seidler* v. *Lafave*, 20 Pac. 789 (1889); *Baxter Mountain-Gold Mining Co.* v. *Patterson*, 3 Pac. 741 (1884) (sufficiency of description of mining claim). *Field* v. *Otero*, 290 Pac. 1015 (1930); *Dallam County Bank* v. *Burnside*, 249 Pac. 109 (1926); *Pickering* v. *Palmer*, 138 Pac. 198 (1914), and *Lohman* v. *Cox*, 56 Pac. 286 (1899), and *Smith* v. *Montoya*, 1 Pac. 175 (1883) (validity of judgment lien against real property). *In re Conley's Will*, 276 P. 2d 906 (1954); *Dunham* v. *Stitzberg*, 201 P. 2d 1000 (1948) (validity of title to real property resting upon adjudication of probate court).

[6] All of the facts upon which the decision operated occurred between 1937 and 1950. *Chavez* v. *Chavez*, 244 P. 2d 781, 782.

indicate that it is to be accorded retrospective effect.[7] A reference contained in an opinion delivered in a civil suit prior to the first of the overruled cases, and a holding in a criminal case that overruling opinions shall have prospective operation only do not lead us to the conclusion that the decision in the *Chavez* case was not to operate retrospectively.[8] We hold, therefore, that under the laws of New Mexico petitioner held the properties as tenant in common, and not as community property, at the death of her husband.

Petitioner next contends that although under the laws of New Mexico she held the properties as tenant in common with her deceased husband, respondent is estopped to deny that they were community property. To support this contention, petitioner urges two sets of facts as invoking estoppel. First, respondent determined deficiencies in the gift taxes of petitioner's husband for 1943 and 1944 on the ground that petitioner and her husband held their property as community property; upon appeal to this Court, decision was entered upon stipulated deficiencies without a hearing on the merits. A decision by this Court, entered upon a stipulation of deficiencies, without a hearing on the merits, is not a decision on the merits such as will support a plea of collateral estoppel, or estoppel *in pais*. *United States* v. *International Bldg. Co.*, 345 U.S. 502; *Trapp* v. *United States*, 177 F. 2d 1, certiorari denied 339 U.S. 319. That the respondent has in prior years asserted liability for taxes on an erroneous basis does not preclude him from determining deficiencies in subsequent years on a proper basis. *Estate of Carl J. Guenzel*, 28 T.C. 59, affd. 258 F. 2d 248 (C.A. 8); *Mary R. Milleg*, 19 T.C. 395; *Swiss Oil Corporation*, 32 B.T.A. 777, reversed on other grounds sub nom. *Commisisoner* v. *Ashland Oil & R. Co.*, 99 F. 2d 588 (C.A. 6). The respondent is not estopped from collecting a tax in one year based upon proper interpretation of State law because he collected

---

[7] In reviewing the effect of an agreement executed in 1951, the court said: "[U]nder *present* New Mexico law, the agreement was sufficient to transmute the community property into the sole and separate property of the respective spouses. Chavez v. Chavez, 56 N.M. 393, 244 P. 2d 781." (Emphasis supplied.)[ *Ortiz* v. *Gonzales*, 329 P. 2d 1027, 1031 (1958). See also *Curtis* v. *Curtis*, 248 P. 2d 683 (1952), in which the court held an agreement, executed in 1936 and ratified in 1941, to transmute the character of community property void as induced by fraud. This case was decided 4 months after the *Chavez* case. If the agreement had not been effective under the rule of the *Chavez* case, the fraud issue would never have been material. See also *In re Trimble's Estate*, 253 P. 2d 805 (1953).

[8] *Baca* v. *Chavez, supra*. *State* v. *Jones*, 107 P. 2d 324 (1940) (opinion by Sadler, J.). Cf. *State* v. *Hernandez*, 123 P. 2d 387 (1942) (opinion by Sadler, J.), in which both prospective and retrospective effect were accorded an overruling decision on a criminal matter. Although Sadler, J. wrote in his dissent filed in the *Newton* case that the majority should have no fear of overruling the *McDonald* case since overruling opinions operate only prospectively, citing *State* v. *Jones, supra*, and although the majority in the *Chavez* case adopted the dissents of Sadler, J., in both of the overruled cases, the adoption of the dissents was specifically limited to the statutory construction therein contained. *Newton* v. *Wilson*, 211 P. 2d 776, 780; *Chavez* v. *Chavez*, 244 P. 2d 781, 783.

an improper tax in a previous year based upon an erroneous interpretation of State law. *Anna I. Hilpert*, 4 T.C. 473, reversed on other grounds 151 F. 2d 929 (C.A. 5). The second fact which petitioner contends establishes estoppel is that respondent assessed and collected additional estate taxes against and from the estate of petitioner's husband on the grounds that the property of the decedent was community property. Except as we were concerned with collateral estoppel, what we have said as to petitioner's first ground for estoppel is applicable to this second ground.

In the course of time the term "estoppel" has come to include many legal theories. Res judicata, collateral estoppel, estopped *in pais*, quasi-estoppel, estoppel by writing, ratification, acquiescence, affirmance, election, waiver, and duty of consistency have been urged on courts as different names for the bar which estoppel invokes. "The effect of such an estoppel is that a fact is conclusively ascertained so that it can no longer be controverted between the parties." *Tide Water Oil Co.*, 29 B.T.A. 1208, 1218. "The label counts for little. Enough for present purposes that the disability has its roots in * * * the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong." *Stearns Co.* v. *United States*, 291 U.S. 54, 61, 62. To paraphrase our holding in *Tide Water Oil Co.*, *supra* at 1224–1225, as here applicable:

> The object of the rule providing for estoppel is to repress fraud and render men truthful in their dealings with each other. Under that rule the author of the misfortune may not himself escape the consequences and cast the burden upon another. Thus the equitable rule of estoppel presupposes an error or fault of some kind by the party estopped, and implies an act in itself invalid. *Merchants' Bank* v. *State Bank*, 77 U.S. 604, 645; *Brant* v. *Virginia Coal & Iron Co.*, 93 U.S. 327, 335; *Henshaw* v. *Bissell*, 85 U.S. 255. Whatever doctrine analogous to estoppel the [petitioner] would invoke, it must be founded upon some act or omission of the [respondent] for which in equity it should be held to account. The equities must be strong enough to overshadow the law. There is here no suggestion of fraud, untruthfulness, concealment, misrepresentation, omission, negligence, violation of duty, or unfair conduct on the part of the [respondent]. [He] was no more the author of the misfortune than was the [petitioner]. The latter was in as good a position as the former to [know the nature of her property interests under the law of New Mexico]. Thus, in this case there is no occasion for applying either the doctrine of estoppel or any doctrine analogous thereto.

Petitioner, therefore, held the properties as tenant in common with her deceased husband, has failed to prove facts which estop respondent from denying that the properties were community property, and is not entitled to employ one-half of the value of the properties at the time of her husband's death as her cost basis therefor for the purpose of computing either gain or depreciation. We hold that the Commissioner is not estopped.

For the purpose of fixing depreciation allowance, as well as long-term capital gain, petitioner has introduced the testimony of an expert witness as to the remaining useful lives of the properties. The witness is a vice president of a nationwide firm of appraisal engineers, has had almost 20 years' experience in appraisals, has performed independent appraisals for various agencies of the Federal Government, and has recently completed a study of the relationship of market value and remaining useful life for the Internal Revenue Service. He testified that in March 1956 he made an estimate of the remaining useful lives of the properties as of December 8, 1951. The testimony of the witness revealed that in making his estimate of the remaining useful life of each building he had considered the date of construction as determined from older inhabitants, municipal tax records, and local real estate men; the nature of construction of each building as determined by personal inspection; past maintenance and improvements; the present physical condition; the physical location, character, and future of each building and its environs; present use; future maintenance requirements; and business prospects. The witness further testified that he considered all of these factors to arrive at his estimates of the remaining useful economic, rather than physical lives of the buildings. We are satisfied that the witness qualifiedly and credibly testified as to the remaining useful lives of the buildings as determined in a manner, and with due regard to factors, reasonably calculated to produce valid estimates. Respondent offered no testimony as to the remaining useful lives of the buildings, but rested upon the presumption of the correctness of his determination, as supported by the fact that petitioner and her husband had established the useful lives of the buildings when they were acquired. The evidence discloses that all of the buildings were acquired between 1919 and 1939, or from 33 and 34 to 13 and 14 years prior to the end of the taxable periods in question. Section 39.23(l)–5(a) of Regulations 118 provides, "The reasonableness of any claim for depreciation shall be determined upon the conditions known to exist at the end of the period for which the return is made." The estimates made as of December 8, 1951, more nearly reflect the conditions on December 31, 1952 and 1953, than those made 14 to 34, and 13 to 33 years earlier. We find, therefore, that the remaining useful lives of petitioner's buildings at the close of each year in dispute are those estimated as of December 8, 1951, as shown in our Findings of Fact, and adjusted to reflect the passage of time. We hold that petitioner, to the extent that she had not previously recovered the capital sum allowable, is entitled to use the remaining useful lives as thus determined.

Petitioner has also contended for a revised apportionment of the value of land and buildings. The contention seems based upon the acquisition by petitioner of her interests in the properties upon the death of her husband. We have already held that petitioner did not so acquire her interests, and consideration of the contention is unnecessary. If petitioner contends for a revised apportionment between land and buildings of her interests as she and her husband orginally acquired them as tenants in common, she has failed to produce any evidence to support such a revision.

*Decision will be entered under Rule 50.*