**Laura MASSAGLIA, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 6446.

United States Court of Appeals
Tenth Circuit.

Jan. 3, 1961.

---

1. Milestone v. Green Tree Corp., D.C.Md., 183 F.Supp. 880.

Palmer Johnson, Los Angeles, Cal. (Conrad T. Bjornlie, Los Angeles, Cal., on the brief), for petitioner.

Douglas A. Kahn, Washington, D. C. (Charles K. Rice, Lee A. Jackson and Melva M. Graney, Washington, D. C., with him on brief), for respondent.

Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and RICE, District Judge.

MURRAH, Chief Judge.

Petitioner seeks review of a decision of the Tax Court (33 T.C. 379), sustaining the Commissioner's determination and assessment of deficiencies in income taxes for the years 1952 and 1953. She computed and returned her taxable income for those years on the theory that her income-producing property was community property under controlling New Mexico law, and that upon the death of her husband in 1951, the basis of her interest was the fair market value at

that time.[1] The Commissioner determined, however, that the property was owned by the petitioner and her husband as tenants in common, and calculated items of capital gain and depreciation on the basis of original cost to petitioner.

The correctness of the asserted computations depends on whether at the death of petitioner's husband, the income producing property was held in community or as tenants in common, and since state law creates legal interests and rights in property, the law of New Mexico as the situs has controlling effect. Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585.

The pertinent facts as stipulated and found by the Tax Court are that petitioner and her husband moved to Albuquerque, New Mexico, in 1916, with practically no capital. New Mexico was, and is, a community property state,[2] but the Massaglias agreed orally that in their contemplated business ventures, they would share profits equally and hold any property purchased with profits as tenants in common.

On October 12, 1943, they reduced their oral agreement to writing, emphasizing further that each party had the

full right of testamentary disposition over his or her undivided one-half of the properties. This agreement was duly filed and recorded in the office of the County Clerk.

During December 1943 and December 1944, the Massaglias made gifts to their son and daughter, filing gift tax returns which claimed that the gifts originated in equal parts from the separate property of the donors. Deficiencies were assessed obviously upon the ground that controlling New Mexico law forbade a husband and wife from transmuting community property by mere agreement of the parties, McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250; and that their separate property agreement was therefore invalid. And see Newton v. Wilson, 53 N.M. 480, 211 P.2d 776.

The appeal from the Commissioner's determination was settled by stipulation of the parties, under which the gift tax was assessed and paid on the basis that the gifts were from community, not separate, property.

When Joseph Massaglia died in 1951, his estate was distributed in accordance with the directions of his will,[3] which recited the separate property agreement

---

1. Internal Revenue Code of 1939. Sec. 113, 26 U.S.C.A. § 113:

"(a) Basis (Unadjusted) of Property.—The basis of property shall be the cost of such property; except that—

\* \* \*

"(5) \* \* \* If the property was acquired by bequest, devise or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition \* \* \* For the purposes of this paragraph the surviving spouse's one-half share of community property held by the decedent and the surviving spouse under the community property laws of any state, territory or possession of the United States or any foreign country shall be considered to be property 'acquired by bequest, devise or inheritance' from the decedent, if the death of the decedent was after December 31, 1947, and if at least one-half of the whole of the community interest in such property was includible in deter-

mining the value of the decedent's gross estate under Section 811. \* \* \* \*"

2. New Mexico Statutes 1953, Chapter 57, Articles 3 and 4.

3. " \* \* \* that all of my property, real, personal and mixed, wheresoever situate, including choses in action, powers and expectancies, was acquired during my marriage with profits from a business operated jointly by my wife, Laura Massaglia, and me. At the inception of our business we entered into an agreement that we would share equally in the profits thereof, and that we would be owners as tenants in common of all properties acquired by us with the profits of the business. This agreement was later reduced to writing and recorded in the office of the County Clerk of Bernalillo County, New Mexico. The undivided one-half interest of my wife, in our property is sufficient to take care of her for life; accordingly, I make no provision for her in this Will."

and a testamentary disposition to adhere to it. Apparently, however, in obedience to the controlling state law, i. e. McDonald v. Lambert, supra, the estate tax return listed all of the property in question as community, and included one-half of the whole of such community property in determining the value of the gross estate. Consistently with his gift tax treatment of the property as community, the Commissioner disallowed one-half of the administration expenses and debts.

After the death of her husband, and during the taxable years 1952 and 1953, the petitioner-taxpayer realized income from the sale of property in New Mexico which she returned on the theory that the property sold was community at the time of the death of her husband, and that her basis was therefore its fair market value at that time. Five months after the death of the husband, however, the Supreme Court of New Mexico specifically overruled McDonald v. Lambert, and Newton v. Wilson, supra, holding that a husband and wife could by agreement transmute separate and community property. Chavez v. Chavez, 56 N.M. 393, 244 P.2d 781, 30 A.L.R.2d 1236. The Commissioner accordingly assessed this challenged deficiency on the theory that the overruling decision in Chavez had the effect of declaring that McDonald and Newton never had been the law of New Mexico, and the separate property agreement, under which the husband and wife held their property as tenants in common, was valid and operative from its inception; and that the taxpayer's basis was therefore the original cost less depreciation.

The petitioner-taxpayer's basic argument is that the Commissioner and the Tax Court erroneously accorded Chavez retroactive effect, i. e. the rights of the parties became fixed under controlling New Mexico law, at the death of petitioner's husband, and such rights could not be retroactively altered by an overruling decision after his death.

 Generally, one does not acquire a constitutionally protected right in a rule of decision, and a state is free to retroactively overrule a prior decision, unless it can be shown that asserted rights have become vested upon the faith and credit of the prior decision. See Great Northern R. Co. v. Sunburst, 287 U.S. 358, 53 S.Ct. 145; 77 L.Ed. 360; Jackson v. Harris, 10 Cir., 43 F.2d 513, 516, 514. An overruling decision generally operates retroactively. "In effect, it declares that the former decision never was the law." Jackson v. Harris, supra. Of course the state court may, if it chooses, provide by express terms or plain implication that the overruling decision shall have only prospective effect. Chavez expressly embraced Mr. Justice Sadler's dissents in McDonald and Newton. And, in the Newton case, Mr. Justice Sadler had indicated that an overruling New Mexico decision would have prospective effect only, citing State v. Jones, 44 N.M. 623, 107 P.2d 324, 329. But, the Chavez decision adopted only Mr. Justice Sadler's "construction of the statute," it did not expressly adopt his view on the prospective effect of the overruling decision. And there is nothing in the tenor or nature of Chavez to indicate that the Court intended the decision to have only prospective effect. Indeed, the subsequent decisions applying Chavez negate the notion that it was not retroactive. See Ortiz v. Gonzales, 64 N.M. 445, 329 P.2d 1027; Curtis v. Curtis, 56 N.M. 695, 248 P.2d 683.

Historically the decisional law of New Mexico strongly indicates that an overruling decision has retroactive as well as prospective effect, and for that reason has overruled decisions involving rules of property only for the most compelling reasons. See Applications of Langenegger, 64 N.M. 218, 326 P.2d 1098; State ex rel. Bliss v. Dority, 55 N.M. 12, 225 P.2d 1007; Baca v. Chavez, 32 N.M. 210, 252 P. 987; Duncan v. Brown, 18 N.M. 579, 139 P. 140. From a review of these New Mexico decisions, the Tax Court reasoned that the Supreme Court of New Mexico intended that Chavez "should have retrospective as well as prospective operation," and that "we are bound to

262

apply that latest decision to the facts of this case." We agree with this reasoning of the Tax Court.

The taxpayer takes the further position that the Commissioner, having treated the separate property agreement as invalid for the purposes of gift and estate taxes, and having assessed such taxes on a community property basis, it is now estopped or equitably precluded from taking a different position under these facts.

 The very nature of government operations requires us to apply the principles of estoppel to its conduct with circumspection. See Vestal v. Commissioner, 80 U.S.App.D.C. 264, 152 F.2d 132; Guenzel's Estate v. Commissioner, 8 Cir., 258 F.2d 248. At the same time, we will not allow the government to deal dishonorably or capriciously with its citizens. It must not play an ignoble part or do a shabby thing. See United States v. Heath, 9 Cir., 260 F.2d 623. "The right and wrong of things and equitable principles have a place in tax matters." Alamo National Bank v. Commissioner, 5 Cir., 95 F.2d 622. These standards of conduct may impose a duty of consistency on the government as well as the taxpayer. See Orange Securities Corp. v. Commissioner, 5 Cir., 131 F.2d 662; and Mertens Law of Federal Income Taxation, §§ 60.04 and 60.14. Cf. R. H. Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647. But neither the duty of consistency, nor the principles of equitable estoppel bind the Commissioner to unauthorized acts of his agents, Sanders v. Commissioner, 10 Cir., 225 F.2d 629, nor preclude him from correcting mistakes of law in the imposition and computation of tax liability, including the power to retroactively correct his rulings, regulations and decisions upon which taxpayers have relied. Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746; Mertens, supra, §§ 60.14–60.17, and cases therein. Cf. LeSavoy Foundation v. Commissioner, 3 Cir., 238 F.2d 589; Wolinsky v. United States, 2 Cir., 271

F.2d 865. See also 1939 Internal Revenue Code § 3791, now § 7805 of the 1954 Code, 26 U.S.C.A. §§ 3791, 7805. If the Commissioner may retroactively correct, for mistakes of law, or even revoke a prior regulation without offense to the principles of equity and justice, a fortiori he may change his position with respect to the taxable incidences of property based upon a change of controlling state decisional law. This inconsistency was not brought about by the Commissioner's own doing. He has done no more than follow the vicissitudes of controlling state law in which he had no voice and which he was bound to follow. The judgment is affirmed.