Lillian GOLDBERG, Plaintiff,

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare, Defendant.

No. 74C157.

United States District Court, E. D. New York.

April 2, 1976.

David S. Preminger, Legal Services for the Elderly Poor, New York City, John C. Gray, Jr., Brooklyn, N. Y., Legal Services Corp., Brooklyn, N. Y., for plaintiff.

David G. Trager, U. S. Atty., Brooklyn, N. Y., by Douglas J. Kramer, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

PLATT, District Judge.

## OPINION AND ORDER

### PRELIMINARY STATEMENT

Plaintiff sues for Social Security widow's insurance benefits and both parties have moved for summary judgment, the defendant seeking dismissal of plaintiff's complaint, and plaintiff seeking benefits in whole or in part, or, in the alternative, injunctive relief and a declaration that 42 U.S.C. § 402(e)(1)(A) and (B) and § 402(e)(4) are unconstitutional on the grounds that they arbitrarily discriminate on the basis of marital status and/or age.

The dispute arises because the plaintiff, when she was a 59 year old widow receiving widow's disability insurance benefits, married her present husband about two months before she became 60 years of age. As a result of her remarriage before age 60, plaintiff became ineligible to receive (i) any more widow's disability insurance benefits, and (ii) any widow's insurance benefits under the Social Security Act. In fact, although she was not eligible therefor since she had remarried some two months prior to age 60, plaintiff did receive all of her widow's disability insurance payments up to the date when she attained that age, *cf.* 42 U.S.C. § 402(e)(1).

The facts are not in dispute. Plaintiff was born on July 15, 1912 and attained the age of 60 years on July 15, 1972.

Plaintiff was once married to a Mr. Murray Kaufman, who died. Thereafter plaintiff filed an application for widow's disability insurance benefits and received them beginning in 1969.

Shortly before her remarriage, plaintiff, at the urging of her son, talked on the telephone with a representative in the local Social Security Office about the possible effects of her forthcoming marriage upon her disability benefits. She was informed that the marriage might reduce her benefits but would not terminate them. The Administrative Law Judge, in the proceeding below, gave "full credence to her testimony that she did consult the local Social Security Office prior to her marriage and that she was misinformed as to the effect of her contemplated nuptial arrangements upon the benefits she was receiving."

Relying upon this information, plaintiff married her present husband, Mr. Goldberg, on May 21, 1972. In July 1972 plaintiff's Social Security benefits were terminated because she had remarried before attaining the age of 60.

As indicated, plaintiff's 60th birthday was on July 15, 1972, 55 days after she remarried.

The Administrative Law Judge made the following findings and conclusions:

"1. The plaintiff filed an application for widow's insurance benefits on March 10, 1969, alleging disability from February, 1969 at age 53.

"2. The claimant remarried in May, 1972, and attained age 60 on July 15, 1972.

"3. By remarrying prior to the attainment of age 60, the claimant lost her right to obtain widow's benefits on

the earnings record of her deceased husband, Murray Kaufman.

"4. There was an overpayment created in the sum of $265.

"5. The claimant was 'without fault' in the creation of such overpayment.

"6. The recovery of such overpayment will be waived, since it is 'deemed' that such adjustment will be 'against equity and good conscience.'"

and it was the decision of the judge

" * * * that, based on her application * * * the claimant is not entitled to widow's insurance benefits under Section 202 of the Social Security Act * * *".

This decision was affirmed by the Appeals Council and plaintiff commenced the present action within 60 days from the date of such affirmance as required by 42 U.S.C. § 405(g).

## THE ESTOPPEL ARGUMENT

Plaintiff first claims that the government should be estopped from terminating plaintiff's disability insurance benefits by reason of the misrepresentation of the local Social Security Office employee concerning the effects of plaintiff's proposed remarriage on such benefits and plaintiff's reliance thereon to her alleged detriment.

The law is and has for many years been, however, that "estoppel cannot be set up against the Government on the basis of an unauthorized representation or act of an officer or employee who is without authority in his individual capacity to bind the Government". *Byrne Organization, Inc. v. United States,* 287 F.2d 582, 587, 152 Ct.Cl. 578 (1961); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Massaglia v. C.I.R.,* 286 F.2d 258 (10th Cir. 1961); *Flamm v. Ribicoff,* 203 F.Supp. 507, 510 (S.D.N.Y.1961); *Terrell v. Finch,* 302 F.Supp. 1063 (S.D.Tex.1969); *Rock v. United States,* 279 F.Supp. 96, 101 (S.D. N.Y.1968).

As the Government points out, the *Terrell* and *Flamm* cases, *supra,* are for

all intents and purposes here indistinguishable. In both cases the claimant relied upon incorrect telephone information from an employee of the Social Security Administration, as did the plaintiff in the case at bar, and in both cases the Court denied plaintiff's motion for summary judgment. In *Terrell,* where claimant remarried in reliance on such misinformation only 26 days before her sixtieth birthday, the Court said (302 F.Supp. at p. 1064):

"Thus, if a widow remarries before age sixty, she forfeits her right to widow's insurance benefits. It is clear that plaintiff has not complied with the provisions of the Act. Unless the government is estopped to deny plaintiff the widow's insurance benefits, the decision of the hearing examiner must be affirmed.

'It is an established proposition that estoppel cannot be set up against the Government on the basis of an unauthorized representation or act of an officer or employee who is without authority in his individual capacity to bind the Government.' *Byrne Organization Inc. v. United States,* 287 F.2d 582, 587, 152 Ct.Cl. 578 (1961). See also, *Massaglia v. C.I.R.,* 286 F.2d 258 (10th Cir. 1961); *Ewing v. Risher,* 176 F.2d 641 (10th Cir. 1949); *Southern Hardwood Traffic Assoc. v. United States,* 283 F.Supp. 1013 (W.D.Tenn.1968); *Flamm v. Ribicoff,* 203 F.Supp. 507 (S.D.N.Y.1961); *Taylor v. Flemming,* 186 F.Supp. 280 (W.D.Ark.1960).

"There is no doubt that the local employee of the Social Security Administration who purportedly misinformed plaintiff was not authorized to make the representation in question.

"*Ewing v. Risher, supra;* *Flamm v. Ribicoff, supra;* and *Taylor v. Flemming, supra,* are all cases in which local Social Security employees allegedly misinformed claimants. In each case the courts ruled that estoppel would not apply. In *Taylor,* a plaintiff seeking dependent parent's

insurance benefits was erroneously informed that she did not have to file a proof of support. In ruling that estoppel did not apply the Court said:

'It is apparent that plaintiff is attempting to assert some type of estoppel against the defendant; however, no cases are cited in support of this position. If Mrs. Taylor did rely to her detriment upon such a statement, it is indeed unfortunate. However, the Government cannot be estopped from insisting upon performance of statutory conditions precedent by the unauthorized acts of an employee of a local Social Security Office.' *Id.* at 284.

"The right to widow's insurance benefits that plaintiff seeks to enforce here is one created by statute, not by common law. Plaintiff must comply with the statutory requirements in order to have an enforceable right. The unauthorized act of a government employee cannot vary the requirements established by Congress."

and in *Flamm,* the Court held (203 F.Supp. at p. 510):

"But even assuming that he did receive 'misinformation' on which Mrs. Berger acted to her detriment, it is plain that estoppel will not lie against the Government under these circumstances. Parties dealing with the Government are charged with knowledge of and are bound by statutes and lawfully promulgated regulations despite reliance to their pecuniary detriment upon incorrect information received from Government agents or employees. Failure to comply with the applicable statute and regulations precludes recovery against the Government 'no matter with what good reason' the claimant believed she had come within the requirements. Estoppel will not lie regardless of the financial hardship 'resulting from innocent ignorance.' *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10; *Walker-Hill Co. v. United States,* 162 F.2d 259 (7 Cir. 1947), cert. den. 332 U.S. 771, 68 S.Ct.

85, 92 L.Ed. 356; *James v. United States,* 185 F.2d 115 (4 Cir. 1950)."

Plaintiff herself cites and relies in part upon the *Massaglia* case, *supra,* but that case clearly does not support her position for there the late Chief Judge Murrah held (286 F.2d at p. 262):

" * * * But neither the duty of consistency, nor the principles of equitable estoppel bind the Commissioner to unauthorized acts of his agents, *Sanders v. Commissioner,* 10 Cir., 225 F.2d 629, nor preclude him from correcting mistakes of law in the imposition and computation of tax liability, including the power to retroactively correct his rulings, regulations and decisions upon which taxpayers have relied. *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746; * * *"

*Corniel-Rodriguez v. Immigration and Naturalization Service,* 532 F.2d 301 (2d Cir. 1976), does not change the principles that control here. While that case, which involved review of a deportation order, did hold that the government was estopped, the ruling was clearly limited to the facts before the Court. The major feature relied on by the Court of Appeals in *Corniel-Rodriguez* to distinguish cases like *Terrell* and *Flamm* seems to have been that the defendant was affirmatively required by regulation to present correct immigration information even in the absence of requests for information, see 22 C.F.R. § 42.122(d). Of course, no such regulation governs Social Security Office employees.

▮ In short, as the law now stands plaintiff may not invoke the doctrine of estoppel to require that the government pay her widow's insurance benefits.

### THE EQUAL PROTECTION ARGUMENT

The plaintiff further claims that Section 202(e)(1)(A) and (B) of the Social Security Act (42 U.S.C. § 402(e)(1)(A) and (B)) violates the Equal Protection Clause of the Constitution in that it discriminates between women similarly sit-

uated solely on the basis of marital status, granting disability benefits and widow's insurance benefits to widows who remain single but denying such benefits to widows who remarry before they reach 60. She also advances the closely related argument that such Section and Section 202(e)(4) of the Act violate the Equal Protection and Due Process Clauses of the Constitution in that they discriminate on the basis of age by granting widow's insurance benefits to women who marry after age 60 and denying such benefits to those who marry before attaining the age of 60.

■ Since plaintiff received and has been allowed to keep all of the widow's disability insurance benefits to which she would have been entitled even if she had not remarried, she lacks standing in this case to raise a constitutional objection to the statutory provision for termination of such benefits upon remarriage.

In other words, plaintiff received widow's disability insurance benefits from age 53 when she was first entitled to the same through July 15, 1972 when she attained age 60. Under 42 U.S.C. § 402(e)(1), if she had not remarried prior to the age of 60 her benefits would have been terminated since she would at that date have become "entitled to an old age insurance benefit equal to or exceeding the primary insurance amount of such deceased individual"—i.e., she would have been entitled to a widow's insurance benefit.

■ Plaintiff may also be understood to argue that a widow who has not remarried by age 60 can receive the standard widow's insurance benefits, that one who has remarried by age 60 cannot do so, and that this constitutes discrimination based on marital status. As will be discussed below, we cannot find that Congress had no rational basis for concluding that widows who remarry before 60 have less need for benefits than those who do not. And unless widows who remarry at any age, even in their 20's, are to be given benefits, Congress had to draw a line; we can only conclude that

Congress had a rational basis for determining that such a line should be drawn somewhere, and cannot say that age 60 is an unreasonable place to draw it.

Thus plaintiff in the case at bar has no basis to make her claim that the statute discriminates between women similarly situated solely on the basis of marital status.

The second half of plaintiff's claim is, as indicated, that the statute arbitrarily discriminates on the basis of age. The gist of this claim is that there is no rational basis to presume that marriage before age 60 improves a widow's economic situation and eliminates her need for social security benefits, but that marriage after 60 does not eliminate the need for social security benefits. This is, plaintiff says, particularly true in cases like hers where the claimant is disabled both before and after age 60.

Stated in another way, plaintiff says she was, on account of her disability, no more able to obtain or hold a job before 60 than she was after that age and Congress recognized that fact when they lowered the age of entitlement to widow's disability insurance benefits to 50. From this, plaintiff concludes that Congress *must have* overlooked inserting a provision in the law which would have enabled disabled widows in their 50's who remarried to receive reduced benefits in the same manner as widows who remarried after 60.

Congress did not, however, overlook such contingency. It specifically provided that disabled widows who remarried in their 50's would stop receiving benefits on such remarriage. 42 U.S.C. § 402(e)(1).

■ Nor may it be said that no rational basis exists for making such distinction. Congress may well have concluded, for example, that a widow who remarries during her 50's (whether or not she is receiving disability benefits during her 50's) will in all likelihood marry a man who still has several years earning capacity from which she will derive support, and that the same is not likely to

be true in the case of a widow 60 years or more.

## CONCLUSION

In reality, in the case at bar, plaintiff when she remarried only 55 days short of her 60th birthday was in the same situation as all other widows just shy of their 60th birthday, and not in a special category on account of disability. By reason of an unfortunate mistake she remarried too soon and lost certain widow's benefits to which she might otherwise have been entitled. This Court, however, cannot rectify this situation; only Congress can.

Accordingly, defendant's motion for summary judgment must be granted and plaintiff's cross-motion must be denied in all respects.

SO ORDERED.