John G. Carzis v. Commissioner.
Carzis v. Commissioner
Docket No. 3175-68.
United States Tax Court
T.C. Memo 1971-73; 1971 Tax Ct. Memo LEXIS 259; 30 T.C.M. (CCH) 304; T.C.M. (RIA) 71073; April 15, 1971, Filed. George D. Coupounas and John M. Doukas, Suite 820, Two Center Plaza, Boston, Mass., for the petitioner. Richard K. Seltzer, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax and additions to tax as follows: Additions to
Tax§ 6651(a)
Taxable Year
Income Tax
IRC 1954
1959
$ 1,325.34
1960
3,308.42
$814.47
1962
9,276.07
1963
1,092.97
32.15
1964 967.15
$15,969.95
$846.62 Certain issues having been disposed of by the parties, the only issues remaining for decision are: (1) whether the petitioner received during the taxable year 1962 the amount of $15,000 from Orleans Inn, Inc., as compensation for services rendered; and (2) what was the composite useful life of leasehold improvements of Shore Restaurants, Inc., made during 1959, 1960, and 1961 for purposes of depreciation deductions. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. The petitioner resided in Cohasset, Massachusetts, *261 at the time of the filing of the petition herein. He filed his individual Federal income tax returns for the taxable years 1959 through 1964 with the district director of internal revenue at Boston, Massachusetts. Petitioner has been in the restaurant business for over 40 years. The restaurants that he has operated have received many awards from various publications. Shore Restaurants, Inc., a corporation, has its principal place of business in Cohasset, Massachusetts. At all times relevant herein, the petitioner owned 100% of the outstanding stock of Shore Restaurants, Inc., and a valid election pursuant to the provisions of section 1372 of the Internal Revenue Code of 1954 was in effect. Shore Restaurants, Inc., filed its returns as an electing small business corporation for its taxable years 1959, 1960, 1961, and 1962 with the district director of internal revenue at Boston, Massachusetts. At all times material herein the petitioner also owned 100% of the outstanding stock of Kimball's Lobster Shop, Inc., which also had its principal place of business in Cohasset, Massachusetts. Each of the above corporations operates a restaurant in Cohasset, Massachusetts. *262 Petitioner is a full-time employee of these two corporations and works for them the entire year. He often works 13 hours per day or more. He acquired these corporations in 1948. At that time, one restaurant was not being operated and the other was open only eight or nine weeks per year. 305 Since about 1959, each corporation has operated its restaurant during the entire year and petitioner has been continuously employed by both corporations. Orleans Inn, Inc., a corporation, was formed in 1957 by the petitioner, together with Agamemnon Commatas and Nick Vrotsos. It operated the Orleans Inn in Orleans, Massachusetts, which is about 80 miles from Cohasset, Massachusetts. The Inn consisted of a restaurant, a cocktail lounge, and accommodations for some overnight guests. At all material times it was an electing Subchapter S corporation and filed its return for its taxable year 1962 with the district director of internal revenue at Boston, Massachusetts. Prior to the incorporation of Orleans Inn, Inc., Vrotsos had been a chef and Commatas had worked as a headwaiter and restaurant manager. Commatas had been aware of the petitioner's background in operating restaurants prior to *263 that time. Sometime prior to 1962, Vrotsos became ill and sold his stock in the corporation. During 1962, of the 15,000 shares of outstanding stock of Orleans Inn, Inc., the petitioner and Commatas each owned 7,499 shares and the remaining 2 shares were owned by the corporation's accountant. When operations first began at the Orleans Inn, the petitioner was present to help out once a week for about two or three months. After that he told Vrotsos and Commatas that they could call on him whenever they needed him but that unless they did he would not interfere with their running of the Orleans Inn. Thereafter the petitioner visited the Orleans Inn two or three times per year. During such visits, he made suggestions to improve the operations of the restaurant. Petitioner made these visits mostly in the winter because during the other seasons of the year he was busy with his other restaurants. Petitioner was the president of Orleans Inn, Inc., and Commatas was the treasurer. Commatas also acted as the host for the Inn and worked there full-time supervising its daily operations. Up to and including the year 1961 Commatas received a salary from Orleans Inn, Inc., varying in amounts *264 over the years, but petitioner received no salary during those years. Sometime in 1962, Commatas told the petitioner that he would like to sell the Orleans Inn and petitioner indicated his agreement. Commatas began efforts to find a prospective buyer. During ensuing negotiations he consulted with the petitioner, particularly about what the restaurant was worth. On May 24, 1962, the assets of Orleans Inn, Inc., were sold, and it thereupon ceased conducting any business operations. On May 25, 1962, Orleans Inn, Inc., deposited $34,435.87 in its bank account from the downpayment made on the sale of its assets. During the remainder of that year it also received payments on a promissory note for a part of the balance of the selling price. Some of the money was left in the bank and Commatas drew checks on the account to pay the remaining debts of Orleans Inn, Inc. From June 8 to October 26, 1962, Commatas drew checks totalling $16,215.06 payable to petitioner and checks in the same total amount payable to himself. The stubs for the first two checks drawn to petitioner and Commatas bore the notation "on his shares." Payment of all these checks was made from the money received as the *265 proceeds of the sale of the assets of Orleans Inn, Inc. When these payments were made, it was not the intention of the corporation or of petitioner or Commatas to pay any compensation to petitioner or Commatas. The return of Orleans Inn, Inc., as an electing small business corporation for its taxable year 1962 was prepared by its accountant. On such return it deducted as compensation of officers $15,000 paid to petitioner as president and $17,675 paid to Commatas as treasurer. It reported a longterm capital gain of $57,481.17 from the sale of its assets. It reported no other capital gains or losses. In such return, under the heading "Schedule of Income Distribution for year of 1962," it represented that there was a net operating loss of $50,412.24, of which one-half constituted the petitioner's distributive share. In the same schedule it represented that the petitioner's share of the long-term capital gain was $28,740.59. It is evident that in computing such "net operating loss" there was not taken into consideration the long-term capital gain of $57,481.17 derived from the sale of assets. Taking into account such capital gain, there was no net operating loss, but, rather, taxable *266 income of $7,068.93. On the first page of the return it was reported that such amount was the taxable income of the corporation for the year 1962. 306 Orleans Inn, Inc., never held a formal corporate meeting to authorize the payment of salary to the petitioner. On its 1962 employer's quarterly Federal returns of taxes withheld from the wages of employees it did not report the payment of any wages to petitioner during that year. On its returns for the first two quarters of 1962, it reported total wages paid to Commatas of $2,675. Orleans Inn, Inc., filed its report for the third quarter of 1962 as its final report and indicated that there was nothing to report. Petitioner's individual Federal income tax return for the taxable year 1962 was prepared by his accountant. On such return, there was reported as salary income the amount of $15,000 from Orleans Inn, Inc. This was offset by the deduction of the amount of $25,206.12 as his share of net operating loss of the corporation, leaving $10,206.12 which he used as a deduction against other ordinary income. Therein there was reported $28,740.59 as his share of the long-term capital gain of the corporation, which was completely offset *267 by other capital losses and capital loss carryover. In the notice of deficiency the respondent did not disturb the petitioner's reporting of $15,000 as salary income from Orleans Inn, Inc., during the taxable year 1962. He disallowed the amount deducted as his claimed share of net operating loss of the corporation, holding that this was offset by his share of the net long-term capital gain of the corporation, the result being that the respondent held that his share of the distributable income of the corporation was $3,534.47, constituting long-term capital gain. Shore Restaurants, Inc., operated a restaurant known as Hugo's Lighthouse located on the waterfront of Cohasset harbor. During the taxable years 1959, 1960, and 1961, the corporation made improvements to the property, referred to as "leasehold improvements," at costs, as shown in the returns, of $41,567.78, $108,765.70, and $502, respectively. On its returns for those years, as well as for the year 1962, [1] in computing its taxable income it claimed deductions for depreciation on such improvements based upon a useful life of 20 years. *268 In December 1961, at the request of Shore Restaurants, Inc., a firm of consulting engineers made a study of various business properties of the corporation, including the "leasehold improvements" above referred to, as well as various improvements made in several prior years, for the purpose of establishing reconstruction costs and proper depreciation. In its report, which was submitted on March 26, 1962, the useful lives of all the various improvements made were set forth, ranging from 5 years to 33 1/3 years. Such report did not set forth a composite useful life of such various improvements made. In the notice of deficiency the respondent did not disturb the 20-year useful life used by Shore Restaurants, Inc., in computing its depreciation deduction on account of leasehold improvements. In his petition, filed on July 1, 1968, the petitioner alleged that the depreciation claimed on the returns for Shore Restaurants, Inc., was correct. However, by an amendment to the petition, made at the time of trial, the petitioner for the first time claimed that the depreciation on the "leasehold improvements" capitalized during the years 1959, 1960, and 1961 should be depreciated on the basis *269 of a useful life of 12 years instead of the 20 years as reported in the returns and as determined by the respondent. Opinion The petitioner does not question the respondent's determination disallowing a deduction claimed by petitioner as his share of a net operating loss of Orleans Inn, Inc., and treating such claimed loss as an offset to his share of long-term capital gains of the corporation. He does contend, however, that the respondent's determination is erroneous in including in his income the amount of $15,000 as compensation received from the corporation. His position is that, although such amount was reported in his return as compensation, such was in error, that he did not in fact receive any salary from Orleans Inn, Inc., in that year, and that all amounts received by him from the corporation constituted his share of the net amount of the distributable capital gain realized by the corporation upon the sale of its assets. 307 During the period June 8 to October 26, 1962, Orleans Inn, Inc., made a series of payments by checks totalling $16,215.06 to petitioner and like payments to Commatas. Payment was made from the proceeds received by the corporation from the sale *270 of its assets. Petitioner testified that he never received any compensation from the corporation. Commatas testified to the effect that no salary was ever authorized for petitioner. Both of them testified that the payment of $16,215.06 to each of them in 1962 was intended as a distribution of their respective shares of the net amount of distributable capital gain realized by the corporation from the sale of its assets. It further appears that, while the petitioner was the president of the corporation, he devoted very little time to the conduct of its business. He devoted his time to the conduct of the business of two other corporations, and left the operation of the business of Orleans Inn, Inc., to Commatas. The petitioner had never in prior years received any compensation from this corporation, whereas Commatas had received compensation. The business of the corporation was concluded upon the sale of its assets in May 1962. It was thereafter that the payments in question were made. When the first of the checks were issued the check stubs denominated the payments as "on his shares." In its employer's quarterly Federal returns of taxes withheld from the wages of employees, the corporation *271 did not report the payment of any wages to the petitioner in 1962, and reported wages paid to Commatas of only $2,675. It is our conclusion that the petitioner's activities in behalf of the corporation were no more than those that an ordinary investor would engage in to protect his investment. Upon the record as a whole, we have concluded and have found as a fact that when the payments were made it was not the intention of the corporation, or of petitioner or Commatas, to pay petitioner any compensation. The first time the corporation characterized $15,000 of $16,215.06 paid to petitioner as compensation was when it deducted that amount on its 1962 return. Petitioner's return was prepared by an accountant. The petitioner testified, in effect, that he was unaware that the return included the item of $15,000 as compensation and that in signing the return he relied upon his accountant. The accountant testified that he followed the corporation's return in including the item in the petitioner's return as compensation. The corporate return was prepared by another accountant and we gather from the testimony, although it is not entirely clear, that the reason such other accountant, in *272 preparing the return, deducted as salary $30,000 of the $32,430.12 paid to petitioner and Commatas was to obtain some hoped-for relief from state tax liabilities. But, whatever the reason, it is our conclusion that the amounts of $15,000 paid to each of the petitioner and Commatas were not intended as compensation. We accordingly hold that the petitioner did not receive compensation of $15,000 from Orleans Inn, Inc., in 1962. Rather, all the amounts received by him constituted distributions from the corporation. In this connection it should be pointed out that in computing the taxable income derived by petitioner from Orleans Inn, Inc., for such taxable year, under the provisions of Subchapter S of the Internal Revenue Code of 1954 (see particularly sections 1373 and 1375(a) of the Code and sections 1.1372-1(c) (2) and 1.1372-1(c)(7) of the Income Tax Regulations) the taxable income of the corporation must be recomputed by disallowing as deductions the amount of $15,000 paid to the petitioner and the same amount paid to Commatas. In support of his contention that the "leasehold improvements" made by Shore Restaurants, Inc., to its property in the years 1959, 1960, and 1961 had *273 a useful life of 12 years instead of the 20 years claimed in its returns, the petitioner introduced into evidence the report of a firm of consulting engineers which, as stated in the facts, purported to fix the useful life of each of the individual improvements made in those years, as well as in prior years. He also introduced the testimony of one of the members of the consulting firm that in his opinion the remaining composite useful life, on December 31, 1961, of the improvements made in 1959, 1960, and 1961 was 12 1/2 years. The petitioner makes the contention that the corporation is not bound by the useful life originally reported on its income tax return, but may, upon proper evidence, overcome such original estimates of useful life, citing M. Pauline Casey, 38 T.C. 357, and Laura Massaglia, 33 T.C. 379, affirmed on other issues (C.A. 10) 286 F. 2d 258. Since the respondent determined that the 20-year useful life employed by the petitioner was reasonable, the burden of proof 308 is upon the petitioner to show error therein. M. Pauline Casey, supra. Upon the evidence presented, we are not persuaded that such improvements, *274 at the time made, had a useful life of less than 20 years. In the first place, the corporation, presumably on the basis of its experience, determined a useful life of 20 years in filing its returns for 1959, 1960, and 1961. When it filed its return for 1962 it had the benefit of the report filed by the firm of engineers, and yet it continued to depreciate the assets on the basis of a useful life of 20 years. While the petitioner's witness testified that in his opinion, based upon the individual useful lives of various items shown in the report submitted in 1962, the remaining composite useful life was 12 1/2 years, he did not present any detailed facts or reasons supporting his conclusion. The report itself did not attempt to fix a composite life. In addition, it should be pointed out that neither in his testimony, nor elsewhere, is there any indication of any change in conditions which would justify, as of the end of any particular year, any revision of the previously determined estimate of the useful life of the improvements. [2]
*275 In view of the foregoing, we approve the respondent's determination as to the useful life of the "leasehold improvements." Decision will be entered under Rule 50. Footnotes
1. The returns for the years 1959, 1960, 1961, and 1962 were filed on May 17, 1960, May 16, 1961, June 14, 1962, and August 15, 1963, respectively.↩
2. Section 1.167(b)-0 of the Income Tax Regulations provides in part as follows: * * * The reasonableness of any claim for depreciation shall be determined upon the basis of conditions known to exist at the end of the period for which the return is made. It is the responsibility of the taxpayer to establish the reasonableness of the deduction for depreciation claimed. Generally, depreciation deductions so claimed will be changed only where there is a clear and convincing basis for a change. Section 1.167(a)-1(b) of the regulations provides in part as follows: (b) Useful life. - For purposes of section 167 the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. * * * If the taxpayer's experience is inadequate, the general experience in the industry may be used until such time as the taxpayer's own experience forms an adequate basis for making the determination. The estimated remaining useful life may be subject to modification by reason of conditions known to exist at the end of the taxable year and shall be redetermined when necessary regardless of the method of computing depreciation. However, estimated remaining useful life shall be redetermined only when the change in the useful life is significant and there is a clear and convincing basis for the redetermination. * * *↩