ALGERNON S. SCHAFER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD SCHAFER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LEONARD SCHAFER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 72370, 72373, 72374.   Promulgated March 28, 1935.

*Eugene Untermyer, Esq.*, for the petitioner.
*R. W. Wilson, Esq.*, for the respondent.

**292**

Leech: The respondent has determined that, as to the securities carried in the so-called "Error Account", the Schafer Bros. partnership was not, during 1929, a "dealer in securities" within the meaning of article 105, Regulations 74,[1] promulgated by the explicit authority of section 22 (c) of the Revenue Act of 1928,[2] and was not entitled, under that statute and regulation, to inventory, at market, its securities carried in that account in computing its income tax for that year. The first issue here involves only the question of whether, upon this record, that determination shall be reversed.

That regulation has been approved as a reasonable application of the statute. *Northeastern Surety Co.*, 29 B. T. A. 297; *Oil Shares, Inc.*, 29 B. T. A. 664. Since respondent's disputed determination was the result of the exercise of an administrative discretion definitely committed to him by statute, difficult as it may be to evaluate presumptions for practical comparison, petitioners' burden in overcoming that determination is undoubtedly heavier than that of overthrowing the general presumption of correctness arising upon all determinations of tax liability by respondent. *Alfred E. Hamill*, 30 B. T. A. 955; *Albert Fried*, 31 B. T. A. 638; *Frederic H. Brendle*, 31 B. T. A. 1188.

There can be no doubt that an individual, partnership, or corporation may engage, at the same time, in more than one distinct branch of business activities, and that one of those may be that of "dealer in securities." Cf. *Harriman National Bank* v. *Commissioner*, 43 Fed. (2d) 950. These separate activities may even all have to do with the purchase and sale of securities, but not all be those of a "dealer

---

[1] ART. 105. *Inventories by dealers in securities.*—A dealer in securities, who in his books of account regularly inventories unsold securities on hand either—

    (a) At cost;

    (b) At cost or market, whichever is lower; or

    (c) At market value,

may make his return upon the basis upon which his accounts are kept; provided that a description of the method employed shall be included in or attached to the return, that all the securities must be inventoried by the same method, and that such method must be adhered to in subsequent years, unless another be authorized by the Commissioner. For the purpose of this rule a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived therefrom. If such business is simply a branch of the activities carried on by such person, the securities inventoried as here provided may include only those held] for purposes of resale and not for investment. Taxpayers who buy and sell or hold securities for investment or speculation and not in the course of an established business, and officers of corporations and members of partnerships who in their individual capacities buy and sell securities, are not dealers in securities within the meaning of this rule.

[2] (c) *Inventories.*—Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

in securities." *James B. Lowell*, 30 B. T. A. 1297; *Northeastern Surety Co., supra; Frederic H. Brendle, supra.* However, the purpose of the statute and the quoted regulation was to provide a means for the correct reflection of income resulting from a definitely limited character of business. Obviously, this purpose would not be furthered by permitting the use of this privileged method of tax computation to income from business activities which are not within the controlling regulation in question. The fact that a taxpayer may be a statutory dealer in securities as to some of its activities, does not, alone, entitle him to return income from its other and different activities, computed by that privileged method.

This record does not disclose that the activities of the Schafer Bros. firm, reflected in the " Error Account ", were essential to its business as a " dealer in securities." The ratio of those activities to the entire partnership business is not shown. However, it does appear that those activities were quite substantial. Certainly, at least, in such circumstances, the partnership is entitled to inventory *only* those securities purchased in its business or branch of business of dealing in securities as defined by the regulation. That regulation, itself, provides for such a segregation and different treatment for tax purposes of the income from separate branches of a business. Cf. *Harriman National Bank* v. *Commissioner, supra.*

The testimony in these proceedings is very clear and positive as to the purpose and character of the transactions covering the securities carried in the " Error Account." During the year 1929, the partnership purchased those securities through orders executed by Leonard Schafer, or other brokers on any exchange on which the desired securities were listed. If the market price went up, those securities were sold through the execution of orders given to Leonard Schafer or other brokers. The identity of the purchasers of such securities was not known to the members of the partnership. The purchase and sale of securities in the " Error Account " had no relation to the partnership's customers' accounts or connection with the execution of orders given by its regular customers. They were purchased solely in expectation of a rise in the market, for the partnership's own account for resale, to any buyer, at a profit.

The meaning of " dealer in securities ", as defined in the controlling regulation, has been considered many times by the courts, and this Board. It is limited to one who, as a *merchant*, buys and sells securities for *customers* for the profit thereon.

It is unnecessary here to attempt an abstract description of what this definition includes, since it is clear that the transactions of the partnership, recorded in the " Error Account ", were not within its boundaries.

Thus, except for customers in the sense that any speculator must have someone to whom he sells, which is not sufficient to bring the partnership within the regulation, it is not shown that as to the securities carried in the " Error Account ", the partnership had *customers*—an essential requisite of the controlling definition. *Albert Fried, supra.* The stocks in dispute were purchased for the firm's own account solely in expectation of a rise in the market, for sale to anyone at a profit, " as distinguished from a purchase to create a stock of securities to take care of future buying orders in excess of selling orders." *Frederic H. Brendle, supra.* So far as this record discloses, as to this branch of the partnership business, it was apparently a speculator and not a " dealer " within the regulation. *Adirondack Securities Corporation,* 23 B. T. A. 61; *Oil Shares, Inc., supra.*

It is contended for petitioners further that, inasmuch as the partnership has followed the practice of inventorying its securities at market in determining its income, since 1925, it should be permitted, as a matter of course, to follow the same practice for the year 1929, here involved. Important as is the evidence of such prior practice of the partnership (*Alfred E. Hamill, supra*), it cannot be and is not controlling here, since we are concerned directly with only the year 1929. Even if the relevant facts pertaining to the securities carried in the " Error Account " in those prior years were similar to the facts appearing here as to 1929, and the respondent approved the partnership's return of income therefrom as a " dealer in securities ", that approval certainly does not constitute more than a determination for those earlier years. It does not foreclose a change in such determination as to 1929. To do so would permit the perpetuation of an error, a result not only repugnant to common sense, but certainly not within the clear intent of the statute. Cf. *Smith Paper Co.*, 31 B. T. A. 28; *W. C. Mitchell Co.*, 27 B. T. A. 645.

Petitioners argue also that the partnership used the inventory method in reporting income for 1929. There was oral testimony to that effect. But the partnership return for that year, admitted in evidence as such, without objection, does not corroborate that contention. Nothing appears in that return after the titles " Inventory at beginning of year " and " Less inventory at end of year." Nor does the record disclose that either in that return or attached thereto was there a description of the method or basis upon which the questioned accounts of the partnership were kept. This is also fatal to the inventory privilege for the partnership. *William W. Vaughan,* 31 B. T. A. 548.

In any event, petitioners have not sustained their burden of establishing error in respondent's determination that the partnership of

Schafer Bros. was not a " dealer in securities " in reference to the " Error Account " within the meaning of the regulation. Nor have they shown its compliance with the conditions, provided in that regulation, precedent to the right to inventory securities carried in that account in determining income for the year 1929.

As to the second issue, involving the deductibility of certain alleged bad debts, the facts are insufficient to support a reasonable determination that the debts actually became worthless during 1929. The record indicates that the debts became worthless at the time the loans were made. Their deduction in computing taxable income for 1929 was properly denied. *Eckert* v. *Burnet*, 283 U. S. 140; *Avery* v. *Commissioner*, 22 Fed. (2d) 6; *Paul Pryibil*, 31 B. T. A. 164; *J. Edgar Davidson et al., Executors*, 26 B. T. A. 754.

The respondent's determination is approved.

Reviewed by the Board.

*Decision will be entered for respondent.*