JAMES R. HANDY and NANCY HANDY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent, JAMES B. MORGAN and SHERRY MORGAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Handy v. Commissioner
Docket Nos. 13579-78, 13580-78.
United States Tax Court
T.C. Memo 1981-411; 1981 Tax Ct. Memo LEXIS 327; 42 T.C.M. (CCH) 593; T.C.M. (RIA) 81411; 2 Employee Benefits Cas. (BNA) 1705; August 10, 1981. *327 H and M were participants in a profit-sharing plan adopted by their employer in 1970. They were also trustees of the trust created under such plan. The employer made contributions to the trust in 1970 and 1971, but there were no contributions after 1971. In 1974, a revenue agent suggested to the trustees that the assets of the trust should be distributed to the participants. Thereafter, in 1974, the distributions were made. In 1978, H and M each transferred a part of his distribution to an individual retirement account. Held: (1) The entire amount of the distribution received by H and M in 1974 was includable in gross income for 1974; the transfers to the individual retirement accounts in 1978 did not qualify as rollover amounts under sec. 402(a)(5), I.R.C. 1954; and (2) the Commissioner is not precluded by the doctrine of estoppel or by an alleged oral agreement with H and M from asserting that the distributions received by them constituted ordinary income. James B. Morgan, for the petitioners. Deborah A. Butler, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in the petitioners' *328 Federal income taxes for 1974: Petitioners
Deficiency
James R. Handy and
Nancy Handy
$ 2,825.22
James B. Morgan and
Sherry Morgan
2,882.63
The only issues to be decided are: (1) Whether the distributions received in 1974 by petitioners James R. Handy and James B. Morgan from a profit-sharing trust were includable in gross income for such year if in 1978 some or all of the properties distributed were transferred by them to individual retirement accounts; and (2) if the distributions were includable in gross income, whether they constituted capital gains or ordinary income. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners James R. and Nancy Handy, husband and wife, maintained their legal residence in Fort Worth, Tex., when they filed their petition in this case. They filed a joint Federal income tax return for 1974 with the Internal Revenue Service Center at Austin, Tex. Petitioners James B. and Sherry Morgan, husband and wife, maintained their legal residence in Bedford, Tex., when they filed their petition in this case. They, too, filed a joint Federal income tax return for 1974 with the Internal Revenue Service Center at Austin, Tex. *329 Mr. Handy and Mr. Morgan are lawyers in Hurst, Tex. From 1965 until 1969, Mr. Morgan was a lawyer with the IRS in Washington, D.C., and Jacksonville, Fla. In 1969, he moved to Hurst and was hired as an associate with the law firm of Handy and Hill. On January 1, 1970, Messrs. Handy, Hill, and Morgan formed the law firm of Handy, Hill & Morgan, Inc. During 1970, Handy, Hill & Morgan, Inc., adopted a profit-sharing plan, and in 1971, the plan was determined by the IRS to be a qualified plan under section 401 or 405 of the Internal Revenue Code of 1954. [1] Pursuant to the profit-sharing plan, a profit-sharing trust (the trust) was created; the trustees of the trust were Messrs. Handy, Hill, and Morgan. In 1970 and 1971, the law firm made contributions to the trust under the profit-sharing plan. In late 1971, Evans J. Karpenko joined Messrs. Handy, Hill, and Morgan in the practice of law under the name Karpenko, Handy, Hill & Morgan, Inc. After Mr. Karpenko joined the others, there were no further contributions to the profit-sharing plan of Handy, *330 Hill & Morgan, Inc. As of October 31, 1974, the trust had the following assets, liabilities, and equity: Assets
Cash
$ 8,329.04
Mortgage and real estate loans
18,750.00
Real estate
39,660.72
$ 66,739.76
Liabilities
Accounts payable
$ 5,464.03
Mortgages payable
25,009.87
30,473.90
Equity
$ 36,265.86
During 1974, the trust was audited by the IRS concerning delinquent returns, and in the course of the audit, the revenue agent, Kelly Semler, suggested that the equity in the trust should be distributed to the participants. After Mr. Semler made his suggestion, the equity in the trust was distributed in 1974 as follows: Participant
Amount
Mr. Handy
[2] $ 11,177.00
Mr. Morgan
11,198.31
Mr. Hill
11,025.35
Other participants
2,865.01 The distributions to the participants other than Messrs. Handy, Hill, and Morgan were *331 in cash. Forms 1099R reporting all the distributions were prepared on behalf of the trust and submitted to the IRS, and on December 20, 1974, the trustees notified the IRS that the profit-sharing plan had been terminated as of October 31, 1974. On December 27, 1978, Mr. Morgan executed on behalf of the trust deeds to two interests in the real estate which had been held by the trust. One of the deeds recited that "HANDY, HILL & MORGAN, INC. EMPLOYEES PROFIT SHARING TRUST * * * have [sic] Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey in undivided 1/8 interest [in the real estate] unto the said JAMES R. HANDY * * *." The other deed was identical except that under such deed Mr. Morgan was the grantee. At the same time, Mr. Handy and Mr. Morgan each executed, on his own behalf, a deed transferring an undivided one-eighth interest in the same real estate to the Texas Commerce Bank of Fort Worth, Tex., as trustee. The obligations of Texas Commerce Bank as trustee under the foregoing deeds were set forth in two identical custody agreements. One such agreement was executed by Mr. and Mrs. Handy on December 27, 1978; the other was executed by Mr. and Mrs. *332 Morgan on December 29, 1978. Such agreements stated that "the Depositor [Mr. Handy in one case, Mr. Morgan in the other] desires to establish a rollover individual retirement account as described in section 408(a) of the Internal Revenue Code of 1954" and that "Contributions to the Account shall be limited to 'rollover contributions' with[in] the meaning of section 402(a)(5), 403(a)(4), 408(d)(3) or 409(b)(3)(C) of the Code." [3]
On their joint Federal income tax return for 1974, Mr. and Mrs. Handy reported the entire amount of the distribution from the trust to Mr. Handy as a long-term capital gain. Similarly, on their joint Federal income tax return for 1974, Mr. and Mrs. Morgan reported the distribution to Mr. Morgan as a long-term capital gain. In his notices of deficiency, the Commissioner determined that such distributions constituted ordinary *333 income. OPINION At the outset, there is a factual matter to be decided. The parties herein have stipulated to the following facts: 7. The distribution in 1974 to James B. Morgan from the profit-sharing plan of Handy, Hill and Morgan was in the amount of $ 11,198.31. * * * 8. The distribution in 1974 to James R. Handy from the profit-sharing plan of Handy, Hill and Morgan was in the amount of $ 11,177. * * * Despite such stipulations, the petitioners argue on brief that in fact there were no actual distributions to Mr. Handy and Mr. Morgan in 1974. In support of such contention, they rely on testimony of Mr. Handy that until 1978 the trust did not make any conveyance of the real estate held by it. However, Mr. Handy's testimony does not convince as to disregard the stipulations. In the first place, there is no documentation corroborating Mr. Handy's testimony; if the trust held title to the real estate from 1974 through 1978, property tax records and other records could have been produced to substantiate such ownership. Second, if the real estate was not distributed in 1974, then some or all of the Forms 1099R filed with the IRS were incorrect. We have no reason to believe *334 that the trustees, knowingly or otherwise, would have filed incorrect Forms 1099R. Third, even if Mr. Handy and Mr. Morgan did not receive interests in the real estate in 1974, there is no evidence that they did not receive their distributions in another form; they could have received their full distributions in the form of cash and interests in the mortgage and real estate loans. Finally, even if the trust held legal title to the real estate from 1974 through 1978, and even if Mr. Handy and Mr. Morgan did not receive their distributions in a form other than real estate, there is no evidence that Mr. Handy and Mr. Morgan, together with Mr. Hill, were not the actual owners of the real estate after 1974. The record does not show who collected rents, who paid expenses, or who, in general, possessed the benefits and burdens of ownership from 1974 through 1978. See Snyder v. Commissioner, 66 T.C. 785 (1976). It is possible that the execution of the deeds in 1978 was merely the formalization of transactions which had already taken place. Accordingly, for these reasons, we have not disregarded the stipulations; rather, we have found as a fact that in 1974 Mr. Handy received a distribution *335 of $ 11,177.00 and Mr. Morgan received a distribution of $ 11,198.31. The first legal issue to be decided is whether the distributions to Mr. Handy and Mr. Morgan were taxable in 1974. The petitioners contend that as a result of the transfers made by Mr. Handy and Mr. Morgan in 1978 under the custody agreements, the distributions in 1974 were not taxable. In support of their argument, they rely on section 402(a)(5), as modified by section 4 of Public Law 95-458, 92 Stat. 1255. As in effect from July 4, 1974, through December 31, 1974, section 402(a)(5) provided, in part: (5) Rollover amounts.--In the case of an employees' trust described in section 401(a) which is exempt from tax under section 501(a), if-- (A) the balance to the credit of an employee is paid to him-- (i) within one taxable year of the employee on account of a termination of the plan of which the trust is a part or, in the case of a profit-sharing or stock bonus plan, a complete discontinuance of contributions under such plan * * * * * * [and] (B)(i) the employee transfers all the property he receives in such distribution to an individual retirement account described in section 408(a), an individual retirement annuity *336 described in section 408(b) (other than an endowment contract), or a retirement bond described in section 409, on or before the 60th day after the day on which he received such property, to the extent the fair market value of such property exceeds the amount * * * [considered as having been contributed to the plan by the employee], * * * then such distributions are not includible in gross income for the year in which paid. * * * There is no dispute that the distributions received by Mr. Handy and Mr. Morgan in 1974 do not qualify as rollover amounts under this section, standing by itself: First, the transfers to the individual retirement accounts (IRAs) were not made within 60 days of the distributions. Second, Mr. Handy and Mr. Morgan transferred only one-eighth interests in the real estate to the IRAs. In 1974, a one-eighth interest in such property had a value of less than $ 5,000; the value was even less if the mortgage liability is considered. Since Mr. Handy and Mr. Morgan each received a distribution of more than $ 11,000, it is clear that neither Mr. Handy nor Mr. Morgan transferred to an IRA "all the property" he received from the trust. Public Law 95-458 amended section 402(a)(5) *337 to delete the requirement that "all the property" be transferred. Generally, such amendment applies only to taxable years beginning after December 31, 1974, but section 4(d)(2) of such law provides in part: (d) Effective Dates.-- (2) Validation of certain attempted rollovers.--If the taxpayer-- (A) attempted to comply with the requirements of section 402(a)(5) or 403(a)(4) of the Internal Revenue Code of 1954 for a taxable year beginning before * * * [October 14, 1978], and (B) failed to meet the requirements of such section that all property received in the distribution be transferred, such section (as amended by this section) shall be applied by treating any transfer of property made on or before December 31, 1978, as if it were made on or before the 60th day after the day on which the taxpayer received such property. [1978-2 C.B. at 369] The petitioners contend that the foregoing provisions validate the transfers in this case. However, there is no merit in such contention. Initially, whether or not the savings provision caused the transfers by Mr. Handy and Mr. Morgan to be considered timely, such provision did not change the rule that for distributions in 1974, "all *338 the property" received must be transferred to an IRA. As we have already held, neither Mr. Handy nor Mr. Morgan transferred all the property he received. Moreover, the Senate Finance Committee report accompanying Public Law 95-458 makes it clear that the savings provision was intended to benefit only those individuals who had already attempted to comply with section 402(a)(5): In addition, the provision permits special "makeup" rollovers for individuals who, prior to enactment of the bill, received a lump-sum distribution and attempted to comply with the present-law rule which requires a rollover contribution to contain all the property distributed. Such individuals would have until the later of December 31, 1978 or the 60th day after the date of enactment of the bill to make a qualified rollover contribution * * * [S. Rept. 95-1127 (1978), 1978-2 C.B. 369, 373.] At trial, Mr. Morgan admitted that until December 29, 1978, there was no attempt to make rollover transfers; the only attempt came after Public Law 95-458 was enacted. Since there was no attempt in this case to comply with section 402(a)(5) until after the enactment of Public Law 95-458, the petitioners clearly were not *339 entitled to benefit from the savings provision. For the foregoing reasons, we conclude that the distributions received by Mr. Handy and Mr. Morgan in 1974 were includable in gross income. The only other issue is whether the distributions constituted ordinary income or capital gain. The petitioners do not challenge the Commissioner's position that under the Code such amounts constituted ordinary income, but they argue that in this case the Commissioner is precluded from taking such position. Primarily, they take the position that the doctrine of equitable estoppel applies to this case: they contend that Mr. Semler directed the trustees to distribute the assets of the trust, that he represented to the trustees that the distributions would constitute capital gains, and that the trustees relied on Mr. Semler's statement in making the distributions. They conclude that the Commissioner is equitably estopped to deny the representations. Generally speaking, equitable estoppel precludes a party from denying his own acts or representations which induced another to act to his detriment. The doctrine of estoppel is based upon the grounds of public policy, fair dealing, and good faith, and *340 is designed to aid the law in the administration of justice where without its aid injustice might result. 3 J. Pomery, Equity Jurisprudence, sec. IX, p. 189 (1941); T. Lynn and M. Gerson, "Quasi Estoppel and Abuse of Discretion as Applied Against the United States in Federal Tax Controversies," 19 Tax L. Rev. 487 (1964); Graff v. Commissioner, 74 T.C. 743, 761 (1980), on appeal (5th Cir., Dec. 8, 1980). In this case, we have found as a fact that Mr. Semler suggested to the trustees that the assets of the trust should be distributed. As we said, the petitioners contend that Mr. Semler actually directed that distributions be made, but the only evidence in support of such contention is testimony by Mr. Handy and Mr. Morgan, and such testimony was ambiguous and unconvincing. Such testimony was also contradicted by Mr. Semler, and for such reasons, we cannot conclude that Mr. Semler "directed," in any sense, that distributions be made. In addition, although Mr. Semler did suggest that the assets of the trust should be distributed, we also cannot conclude that the Commissioner is estopped to assert that the distributions constituted ordinary income. First, although Mr. Handy and Mr. *341 Morgan each testified at trial that Mr. Semler represented to them that the distributions would constitute capital gains, we are not convinced that Mr. Semler made any representations which either purported to be, or were understood to be, binding on the Commissioner. At trial, Mr. Semler himself could not recall making representations of any sort about the tax treatment of the distributions. Mr. Handy and Mr. Morgan did testify to such representations, but it appears that Mr. Morgan was aware that any such representations were merely Mr. Semler's opinion of the law: Mr. Morgan admitted at trial that he and his accountant "grabbed the Code" to determine whether Mr. Semler ws correct in his analysis of the law. If Mr. Morgan believed that Mr. Semler's oral representations were binding, he would not have needed to examine the law. Moreover, Mr. Handy and Mr. Morgan were both lawyers. Without persuasive evidence, it is difficult to believe that, as lawyers, they would unquestioningly have relied on Mr. Semler's oral statement as to the tax effect of the distributions. In the second place, it is settled that generally the Commissioner is not estopped to correct mistakes of law. *342 See Automobile Club of Michigan v. Commissioner, 353 U.S. 180 (1957); Massaglia v. Commissioner, 286 F. 2d 258 (10th Cir. 1961), affg. 33 T.C. 379 (1959). As the District of Columbia Circuit Court of Appeals stated in Schafer v. Helvering, 83 F. 2d 317, 320 (1936) (affg. 32 B.T.A. 289 (1935), affd. 299 U.S. 171 (1936)), "Whoever deals with the government does so with notice that no agent can, by neglect or acquiescence, commit it to an erroneous interpretation of the law." Similarly, the Supreme Court has stated that the Commissioner may correct a mistake of law "even where a taxpayer may have relied to his detriment on the Commissioner's mistake. * * * This principle is no more than a reflection of the fact that Congress, not the Commissioner, prescirbes the tax laws." Dixon v. United States, 381 U.S. 68, 73 (1965). In this case, if Mr. Semler misled the trustees as to the tax consequences of the distributions, his statements were clearly mistakes of law, and such statements are not a basis for estoppel. The petitioners rely upon Greenwald v. Commissioner, 366 F. 2d 538 (2d Cir. 1966), affg. and revg. 44 T.C. 137 (1965), but that case did not involve estoppel. There, the issues *343 were whether a profit-sharing trust had lost its tax exemption and whether the entire amount of a distribution made by the trust was taxable as ordinary income. The Court held simply that under section 401, the trust had lost its exemption and that under section 402, a certain portion of the distribution was taxable as ordinary income. In the present case, there is no question as to the proper tax treatment under the Code of the distributions received by Mr. Handy and Mr. Morgan. Rather, the issue is whether the Commissioner is precluded from asserting that the distributions constitute ordinary income, and for the reasons we have stated, we cannot conclude that he is precluded by the doctrine of estoppel. The petitioners contend that there is a second, related reason why the Commissioner is precluded from asserting that the distributions constituted ordinary income. They insist that there was an oral agreement between the trustees and Mr. Semler whereby the trustees agreed to distribute the assets of the trust and Mr. Semler agreed that the distributions would constitute capital gains. They insist that the Commissioner is bound by such agreement. However, the only evidence concerning *344 the existence of an agreement was testimony by Mr. Handy and Mr. Morgan and by their accountant. Such testimony was undetailed and vague and does not convince us that there was a full meeting of the minds between Mr. Semler and the trustees. Mr. Semler may have expressed his view that the distributions would constitute capital gains, and if so, he may have thought that the trustees would rely on such statement in distributing the assets of the trust, but we are not convinced that there was an agreement concerning such matters. Even if there was an agreement, it would be unenforceable for at least two reasons. First, section 7121 and the regulations thereunder provide that agreements between a taxpayer and the Commissioner concerning the taxpayer's tax liability are binding only if in writing. There is no evidence that there was a written agreement in this case. Second, Delegation Order No. 97 (Rev. 18) provides that only Assistant Commissioners, Regional Commissioners, District Directors, and certain others may bind the Commissioner in a written agreement concerning the tax liability of a taxpayer. Mr. Semler occupied none of the positions specified in the delegation order, *345 and therefore, he could not have bound the Commissioner even in a written agreement. [4] Hence, we hold that the Commissioner is not precluded from asserting that the distributions to Mr. Handy and Mr. Morgan constituted ordinary income. Decisions will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue, unless otherwise indicated.↩
2. On the Form 1099R prepared with respect to the distribution to Mr. Handy, the amount distributed is shown to be $ 11,177.19. When such amount is added to the amounts distributed to Mr. Morgan, Mr. Hill, and the other participants, the total equals the equity in the trust. However, the parties have stipulated that Mr. Handy received a distribution of $ 11,177.00, and we will abide by that stipulation.↩
3. In an addendum to the custody agreements, the bank agreed to reconvey the real estate interests to Mr. Handy and Mr. Morgan if such interests are determined by this Court not to qualify as rollover distributions or if the distributions which Mr. Handy and Mr. Morgan received in 1974 are determined by this Court to constitute capital gains.↩
4. Nor could the alleged agreement be enforceable under sec. 7122. That section authorizes the Commissioner to compromise "any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense * * *." Such section does not specifically require that compromises be in writing, and the courts have not yet decided whether an oral compromise is enforceable. See Boulez v. Commissioner, 76 T.C. 209↩ (1981). However, if the alleged oral agreement constituted a compromise the compromise was not binding on the Commissioner since Mr. Semler was not authorized to enter into compromises. See Delegation Order No. 11 (Rev. 12).